with 21-852. Mr. Unger, you've reserved three minutes for rebuttal. That's correct, Your Honor. You may proceed when you're ready. Thank you. May it please the court. My name is Randall Unger. I represent William Brooks on this case. I'd like to first address the And I submit to this court that Mr. Brooks' appeal is not moot simply because he was recently paroled. He is now under the supervision of the New York State Division of Parole and will remain so for the rest of his life. Is there a condition within that that violates the Constitution? Is there something in the supervision that's provided that raises the same question of conditions of incarceration? Well, I would say that's not exactly the situation. I mean, obviously, since he is on parole supervision, he remains at liberty. Obviously not within the confines of an institution where the Originally, that was your problem. Yeah, that's correct. But the problem is, or the situation really, is that he is subject to being brought back into state custody at any time for a variety of reasons. Some could be serious, some fairly insubstantial. And because of that risk, and based upon this court's precedent, as well as the Supreme Court's precedent- In that case, doesn't everybody who's on supervised release have the same course of action? Because they might have to go to jail. Well, I mean, yes. I mean, potentially that could be the situation as well. I'm only dealing here with the parole supervision. And it's parole supervision for the remainder of Mr. Brooks' natural life. Remember, he was convicted of murder and was sentenced to 25 years to life. That's lifetime parole, as far as I know. He will be on parole until the day he dies. And every single one of those days, subject to being taken back into state custody, should he violate any of the numerous conditions that he's subject to. Counsel, what specific relief were you seeking before he was released, obviously? You were seeking permanent release, regardless of future pandemic conditions, and without any potential supervision? It's a really interesting question, because I've seen- My understanding is that he was seeking permanent release from custody. I've seen some references, and I'm not sure whose briefs it was, but that this was going to be a temporary release. Some of the petitions were phrased as seeking temporary release. Right, but I don't think Mr. Brooks sought a temporary release. I think it was an outright release. But what would be the theory of entitlement to outright release, regardless of future conditions of the pandemic, if the constitutional challenge is based on the conditions during the pandemic? Another very good question, which I'm not sure I can really answer. I think because of the novel nature of the coronavirus, nobody really knew, at least at the time the petitions in these various cases were filed, Mr. Brooks in particular, I think it was in 2020. At a point in time when there was no vaccine, there was no treatment for the virus. I don't know that there still is any real recognized treatment for the virus. We still, to this day, don't even know what caused the virus to spread. And was your theory then, again, just if we go back in time, the theory was that there'd be release and no supervision? Well, Brooks didn't really specify that. Obviously, he was proceeding pro se at that point. Whether or not there was going to be any, I mean, in the normal course of events, as is now the case, he was released to the supervision of the New York State Parole Division. So I would imagine, but I can't really say because- That would be the same. It wasn't specified in the papers, but it would make sense that if his petition for release was granted, he wouldn't just be sent out onto the streets without any kind of supervision. Right. As a- So would he prevail, he'd have exactly what he has now? Which I think sounds a lot like mootness, doesn't it? Somewhat. However, I would rely on the precedents of this court, and I think basically every other court that have held that- Those cases are very different. Those cases talk about, not just factually, but principally. They talk about the ability to continue to challenge your underlying conviction, even if you've been released. I understand. Admittedly, those precedents involve challenges by the inmates to the underlying convictions or the sentences that were imposed, whereas this involves really a conditions of confinement claim. It is somewhat different, and the court has caught me on what really seems to be a very important point in terms of whether or not this appeal is moot. Nevertheless- But you're saying, am I right in understanding that you're saying that there still is a risk of reincarceration, and that reincarceration, because of his own characteristics, would subject him potentially to a risk of illness that, although the pandemic intensity has waned, is still sufficient to overcome a suggestion of mootness. Is that right? I think that's right. How can we decide anything like that when we don't know when it's going to happen? Maybe it's going to happen five years from now, and COVID will be as common as smallpox. Your Honor, respectfully, we don't know. That's my point. And Mr. Brooks may lead a completely blame-worthy, blame-worthy? Blame-less. Blame-less life, may never walk across the street on a red light, and may never face the prospect of being incarcerated again. But we don't know that. He's always at risk during the course of his natural life of being reincarcerated for a violation of the numerous conditions of parole. For that reason, I think the precedent that we are dealing with, that we're bound by, says it's not moot for that very reason. That the facts of the case, or the claim itself, is not the kind of claim normally raised on a habeas claim, I don't think should make any difference. Unless this court wants to carve out an exception where conditions of confinement claim, as opposed to an attack on the conviction or sentence themselves. We'll get to that with you. Well, that's up to this court. I'm not sure. Thank you, Mr. Unger. Thank you, Your Honor. And you have three minutes reserved for rebuttal. We'll hear from Mr. Ament. Ament. Thank you. It rhymes with Raymond, Your Honor. Raymond. It rhymes with Ramond. Go ahead. May it please the court. Andrew Ament for respondent. This appeal is moot. The petition complained only of the conditions of Mr. Brooks' former incarceration. It sought only one form of relief, that is release to parole. He was, in fact, released to parole on December 15th of last year. You say he sought release to parole. Is there a paragraph in the petition itself? I see. This is at, I'm referring to the wherefore paragraphs, the prayer for release at A-100 to A-101. Yeah. Where he asks to be delivered to the New York State Division of Parole. Right. In any, pardon me, Your Honor. In any event, this petition contains no claim whatsoever that could entitle Mr. Brooks from release from, on conditions anything other than the parole conditions. He's not challenging the sentence. He's not, in response to Judd Sachs' question, arguing that the conditions themselves are unconstitutional. And the case law, contrary to what my friend has said, is clear that in this situation the claim is moot, despite the prospect that he could, again, commit a violation of his parole conditions and be returned to prison. In opposing respondents' motion to dismiss, my friend cited United States versus Sanchez Gomez, 138 Supreme Court Reporter, page 1532. What the court held there was that a similarly situated inmate or prisoner, having been released, could no longer maintain a claim in the absence of a challenge to an underlying judgment or conviction. It recognized a narrow exception that it held not to apply, where there was specific evidence that due to some factor beyond an individual's control, that individual would be unable to conform himself or herself to the requirements that would prevent them from being put back into a situation where they might face the same allegedly unconstitutional constraints. Mr. Brooks is not suggesting that he's incapable of abiding by his conditions of parole. He agreed, in fact, to abide by them when he was released. And there's nothing in the record that indicates that simply because he's on parole for the rest of his life, he's incapable of conforming himself to the conditions. We see enough cases involving violations of supervised release to know that it can be relatively easy, especially with a lifetime term of supervised release, to run afoul of some of the conditions that are imposed. And I'm looking to see whether Mr. Brooks alleged that the prison system was not abiding rigorously by CDC guidelines. And so if there is some kind of risk that he could be re-incarcerated for violation of supervised release, and there's an allegation that the prison system has not been abiding by CDC guidelines, and that puts his health in danger, why does that not meet Article III standards? That would be going well beyond anything that the U.S. Supreme Court, or to my knowledge this Court, has ever recognized as capable of sustaining a live controversy that is based specifically on former conditions of confinement that no longer exist. Simply because he could violate his conditions of parole, that is exactly the type of situation that existed in Spencer v. Chemna. It existed in Sanchez Gomez. It would exist potentially in any case where someone is released to parole supervision. And the courts have been quite clear that at least in the absence of anything suggesting otherwise, an individual must be presumed to be capable of conforming his conduct to the law that applies. And I mean, I do think it is a separate point from the one that you've just made, that he has actually gotten precisely all of the relief that he saw. Yes, that is also another reason why this case is moved. And any future claim is speculative and at a very minimum unright. I'd also like to, if I might, briefly address the question that this Court identified in its order of February 9th. And that is that this case would remain moot, even if Mr. Brooks had not been released, in the absence of an expanded certificate of appealability. The reason for that is that Mr. Brooks, unlike the petitioners in the Acevedo case, obtained a judgment or is facing a judgment from the District Court that dismissed his federal habeas petition without prejudice for lack of exhaustion. Therefore, even if this Court were to not grant a COA on the exhaustion or conversion issues, and instead take up the Section 1983 v. habeas claim, the most relief that Mr. Brooks could get is a judgment entitling him to dismissal of his petition without prejudice for lack of exhaustion. And that is exactly the judgment that he already has. Is there any, if we were to reach the, well, let me start with this. So your position is as it's currently postured, there's no relief available to Mr. Brooks? Correct. No matter what we decide? Well, if the certificate of appealability is not expanded. Right. So given what we have jurisdiction to conclude, to reach now, pre-certificate of appealability being expanded, no relief could be made to the petitioner regardless of what we decide. Fair to say? Yes. The issue is that the sole question in the unexpanded certificate of appealability is one that did not aggrieve Mr. Brooks and was not cross-appealed. And so given that, I suppose the next question is, do we then need to take as a sequencing matter the question of the expansion of the certificate of appealability first in your view? Yes, it would logically follow because if the case is moved in the absence of an expanded certificate of appealability, then there's nothing for this court to decide. Right. And then the next question I think is, if we agree that that's the case in terms of sequencing and we conclude that there's no basis to expand the certificate of appealability on the exhaustion issue, then is the case moot? Yes, the case is moot and it would be a matter of this court's equitable discretion. I suppose in this case, they wouldn't actually, sorry, I'll say that. Ordinarily when a case is mooted on appeal, this court would have discretion to direct the district court to vacate its own judgment as having been mooted under the Supreme Court's practice in Munsingware. But in this instance, there wouldn't even necessarily be any occasion for that form of relief because as I stated, Mr. Brooks already has the most relief that he would have. Do you have any, so we've talked about two different kinds of mootness, the mootness that may follow from either the current lack of the expansion of a COA or a determination that the COA shouldn't be issued. That's one kind of mootness. And the earlier mootness we talked about was because he's been released. Do you have a view on whether, again, it's a sequencing question, whether we're required or at liberty to decide those in either order we choose? We don't have a view on which sequence the court follows in determining that the case no longer presents a lot of controversy. I believe the U.S. Supreme Court decision in Sinochem leaves choosing between subject matter jurisdiction issues to a court's discretion. However, it would be our preference, I suppose, for the court to first hold that the case is mooted by Mr. Brooks' release simply because that is a categorical holding that would apply regardless of particular facts of expanding a COA or not. In any event, if this court were to consider whether to expand the certificate of appealability, we don't think that would be appropriate under Section 2553. And in any event, we believe the court was correct in its procedural rulings. Just one more to follow through on what relief would potentially be available. If we were to conclude, if we were to reach the question of 1983 v. habeas and were to conclude that it had to be in 1983, is there any potential avenue for Mr. Lemoutness, based on his having been released question aside, is there any potential for him to seek to have his petition recharacterized as a 1983 or dismissed with leave to bring it as a 1983? Is there any avenue of continuing litigation available for that conclusion? It would be available. However, he would not need permission from this court. What he got was a judgment saying that it was without prejudice, a holding that Your Honor is positing might bar him from coming back as a habeas, but he certainly could come back under Section 1983. But that's true whether we affirm? Correct. In other words, yes. Or dismiss? Correct. Yes, regardless of what this court does, he has that option. All right. Thank you. We'll hear from you again down the road. Mr. Unger, you have three minutes. Thank you, Your Honor. Now, with respect to the government's argument that it's unlikely that Brooks will ever be subject to the same conditions of confinement, I don't think that's accurate. As I've stated, he is at risk of being taken back into state custody at any time for the rest of his life. The conditions that he set forth in his petition can recur in different contexts. We seem to be past the crisis that was overwhelming our country and the world, in fact, during the year 2020. But from what I've heard, from what I've been reading, scientists have been predicting there'll be more viruses that are going to infect us. And the inmates in the correction facilities are particularly vulnerable to those viruses. Once they spread throughout the prison system, they're going to be severely impacted again, just as they were at the height of the- This part of your argument, I take it, is based on what we read in the newspapers and not what's in the record. Well, no. I mean, yes. The court's question, my answer is yes. But I think it's been pretty well recognized that because of certain climate factors, there are going to be new viruses coming forward, and we'll be going through this again and again. But I'm still confused about what relief, then, you're requesting that he doesn't already have. Do you want some condition to be imposed that he could never be reincarcerated? How can we possibly do that? Well, that would be wonderful, but I don't think that's likely. But what are you asking for, then? Well, what I'm asking for is for there to be further proceedings on his petition in the sense that since he is on- But if there are further proceedings and you prevail at the end of the day, what are you asking for? His release. His release. I mean, his release, he's released. He is released, right. Without- He is released. Yes, at the current time, he is not in custody. But as I've stated, that could change at any time. It could change for me if I'm crossing the street the wrong way. It could change for anybody. You're right. I really, really, really don't make light of this, but it sounds to me that your problem is you've been too successful. You got your client out of jail. I didn't have anything to do with that. Time took care of that. Thank you for your time. Thank you, counsel.